IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BILLY CLIFTON STEWART,
     Plaintiff,

vs.                               Case No. 5:09cv285/RS/CJK

FLA. DEP'T OF EDUC. &
VOCATIONAL REHAB. DIV., et al.,
     Defendants.

---

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed a fourth amended civil rights complaint under 42 U.S.C. § 1983.  (Doc. 38)  Upon review of the amended complaint, the court concludes that plaintiff has not presented an actionable claim, and that dismissal of the case is warranted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Billy Clifton Stewart ("Stewart"), initiated this lawsuit on August 17, 2009 (doc. 1), naming as defendants the Florida Department of Education ("DOE"), its Division of Vocational Rehabilitation ("DVR"), and Bill Palmer ("Palmer"), the Director of DVR.  Plaintiff alleged violations of his rights under the Fourteenth Amendment, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, 18 U.S.C. § 245, and 29 U.S.C. §§ 705(20)(a) and 722(c)(1).  On September 2, 2010, plaintiff filed a fourth amended complaint, Doc. 38, naming as additional defendants Brian Mingo ("Mingo"), Edward Jordan ("Jordan"), Fred Poteat ("Poteat"), and Melinda Miguel ("Miguel").  Plaintiff seeks compensatory damages in the amount of $2,500,000.

In support of his claims, plaintiff alleges that he was a client of DVR in

September 2007 and had expressed a desire to become a public school teacher.[1] Plaintiff appeared on September 19, 2007, in Fort Walton Beach, Florida, for an interview with DVR counselor Brian Mingo.  Mingo thereafter terminated DVR's services to plaintiff and closed his case file.  (Doc. 38, 14)  According to plaintiff, Mingo closed the case because plaintiff refused Mingo's demand that plaintiff change his employment goal from teaching in a public school to teaching in a prison program or other adult education program.  (Doc. 38, 14)  Mingo signed a letter formally advising plaintiff that his case file had been closed, which letter was mailed to Stewart in October 2007.

Having been advised of his right to appeal the adverse determination to cease services and close his case file, plaintiff timely requested an administrative hearing, which was held on March 13, 2008.  On June 3, 2008, an administrative law judge ("ALJ") issued a Recommended Order upholding DVR's determination.  DOE Commissioner Eric Smith ("Smith") rendered a Final Order on August 12, 2008, thereby adopting the ALJ's Recommended Order.  Plaintiff declined to exercise his right to seek judicial review under § 120.68, Florida Statutes.

## DISCUSSION

Because plaintiff is proceeding *in forma pauperis*, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  The court must read plaintiff's *pro se* allegations in a liberal fashion.  *See Haines v. Kerner*, 404 U.S. 519,

---

[1] Although plaintiff's fourth amended complaint is a bit rambling and largely conclusory, the court has expended effort to comprehend Stewart's allegations and present them in a fair and coherent manner.  The facts as presented have been gleaned from the various complaints plaintiff has filed in this case.

520-21 (1972).  Dismissals for failure to state a claim are governed by the same standard as FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).  *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).  In determining whether the complaint states a claim upon which relief may be granted, the court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 570 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and dismissing plaintiffs' case for failure to state a claim, because plaintiffs had "not nudged their claims across the line from conceivable to plausible").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Under FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court reiterated in *Iqbal*, 129 S. Ct. at 1949, although RULE 8 does not require detailed factual allegations, the rule does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *See id.*  Rather, the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," that is, "across the line from conceivable to plausible . . . ." *See Twombly*, 550 U.S. at 555, 570.

A complaint is also subject to dismissal for failure to state a claim when the

allegations—on their face—show that an affirmative defense bars recovery on the claim. *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*,  549 U.S. 199, 215 (2007) (reiterating that principle and providing, as an example, that if a complaint's allegations show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim).

*Eleventh Amendment Sovereign Immunity*

Pursuant to the doctrine of sovereign immunity, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *See* U.S. CONST. amend. XI. "[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "As such, it is no different from a suit against the State itself." *Id.*

Notwithstanding the bar to damage suits against the states in federal court, this immunity may be overcome in one of two ways:  (1) "Congress may abrogate the state's immunity by explicit Congressional enactment through its legislative powers granted to it by the states in § 5 of the Fourteenth Amendment" or (2) "the state itself may waive its Eleventh Amendment immunity and, thereby, consent to suit in federal court." *See Gamble v. Fla. Dep't of Health and Rehab. Servs.*, 779 F.2d 1509, 1512 (11th Cir. 1986).  Notably, "§ 1983 . . . has been held not to be a Congressional

abrogation of the states' immunity from damage suits . . . ."  *Id.* (citing *Quern v. Jordan*, 440 U.S. 332 (1979); *Edelman v. Jordan*, 415 U.S. 651, 674-77 (1974)).

Given these interpretations of the Eleventh Amendment, the doctrine of sovereign immunity operates to bar plaintiff's claims for money damages against the Department of Education and its Division of Vocational Rehabilitation, both of which are agencies or departments of the state of Florida.  *See Halderman*, 465 U.S. at 100 (recalling the Eleventh Amendment's proscription of suits "in which the State or one of its agencies or departments is named as the defendant").   The Eleventh Amendment as interpreted by the Supreme Court also bars recovery of money damages in an official capacity action against defendants Palmer, Mingo, Miguel, Jordan, and Poteat.  *See Will*, 491 U.S. at 71 (explaining that a suit against a state official in her official capacity operates in effect as "a suit against the official's office," such that the state enjoys immunity from suit under the Eleventh Amendment).

Plaintiff has not argued either that Congress abrogated the state's immunity by explicit enactment or that the state waived its sovereign immunity and, thereby, consented to this suit for damages in federal court.  Plaintiff, therefore, has identified no legal theory that might lift the bar of sovereign immunity, which precludes recovery of damages from any defendant in an official capacity.  Plaintiff is thus limited to sue for damages on a theory of individual liability, which is significant because plaintiff relies solely on the assertion that each defendant, with the exception of Mingo, is culpable merely by virtue of his or her status as a state official.  In other words, plaintiff does not allege that any defendant, save Mingo, took affirmative action to cause him constitutional harm.  Accordingly, but for the Mingo claim, plaintiff's individual capacity allegations could be dismissed, without further

analysis, for failure to state a claim upon which relief may be granted.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.").  The only viable claim that would then remain is one against Mingo in his personal capacity.[2]  In an abundance of caution, however, the court will nevertheless address plaintiff's claims *in toto*.

*Count I*

Plaintiff alleges in count I that Palmer, the Director of DVR, violated his Fourteenth Amendment right to procedural due process of law, thereby impugning his reputation, diminishing his health, and depriving him of the opportunity to "financially benefit from working."  (Doc. 38, 28)  Palmer, plaintiff asserts, perpetrated the alleged constitutional violation by "forcing the [p]laintiff to request a hearing in order to contest multiple improper case file closures . . . ." (Doc. 38, 28) The rule is clear that a state may not deprive a person of life, liberty, or property without due process of law.  *See* U.S. CONST. amend. XIV, § 1.  But "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).  Significantly, "injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment." *Behrens v. Regier*, 422 F.3d 1255, 1259 (11th Cir. 2005) (citing *Paul v. Davis*, 424 U.S. 693, 701-02, 712 (1976)); *see Siegert v. Gilley*, 500 U.S. 226, 233 (1991) ("Defamation, by itself,

---

[2] Although plaintiff does not distinguish between official and individual capacity claims, in accordance with its directive to read *pro se* allegations in a liberal fashion the court will construe the complaint as raising a claim against each defendant in both his or her official and personal capacity. *See Haines*, 404 U.S. at 520-21.

is a tort actionable under the laws of most States, but not a constitutional deprivation.").

To the extent plaintiff alleges injury to his reputation, the Supreme Court has not extended the protections of the Fourteenth Amendment's due process clause to such harms. *See Siegert*, 500 U.S. at 233. More importantly, plaintiff has failed to identify facts tending to show that Palmer played any role in the administrative proceedings that upheld the decision to close plaintiff's case file: Mingo took the initial step of closing the file, the ALJ recommended that the decision be upheld, and DOE Commissioner Smith rendered a Final Order adopting the ALJ's recommendation. In other words, Palmer simply did not participate in the process with which plaintiff now takes issue. Inexplicably, except insofar as plaintiff may rely upon director Palmer's official capacity, plaintiff asserts that Palmer violated his Fourteenth Amendment right to procedural due process by "forcing" him to engage the very administrative processes employed in the interest of ensuring procedural due process of law. Because the facts as pleaded do not state a claim to relief that is plausible on its face, this allegation should be dismissed for failure to state a claim. *See Twombly*, 550 U.S. at 570.

*Count II*

For his second claim, plaintiff alleges that Palmer violated his right to petition for redress of grievances under the First Amendment by ignoring his "attempts to have his grievances addressed . . . ." (Doc. 38, 29) "The right to petition the government for redress of grievances is grounded in the [F]irst [A]mendment, and generally includes the right of every citizen to access to the courts." *Gillard v. Norris*, 857 F.2d 1095, 1101 (6th Cir. 1988). "The clause also guarantees every citizen the right to petition for redress of grievances, through available procedures,

any department of the government, including state administrative agencies." *Id.* Here, plaintiff declined to exercise his right to appeal the adverse administrative determination, choosing instead to forego the process of judicial review as provided for under § 120.68(1), Florida Statutes.  Having failed to take an appeal or show that the state affirmatively prevented him from petitioning, plaintiff cannot now demonstrate that Palmer deprived him of his First Amendment right to petition for redress of grievances. *See Gillard*, 857 F.2d at 1101.  This First Amendment allegation should be dismissed for failure to state a claim, because the facts as pleaded do not state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570.

Further, plaintiff contends that Palmer failed to recognize "such obvious factual flaws" in the ALJ's Recommended Order and thereby violated the provisions of 42 U.S.C. § 1985 and § 504 of the Rehabilitation Act.  (Doc. 38, 29)  "Section 504 of the Rehabilitation Act prohibits discrimination against otherwise handicapped individuals in 'any program or activity receiving Federal financial assistance . . . .'" *Jones v. Metro. Atlanta Rapid Transit Auth.*, 681 F.2d 1376, 1377 (11th Cir. 1982).  "Section 504's provisions extend only to 'otherwise qualified individual[s] with a disability.'" *Onishea v. Hopper*, 171 F.3d 1289 (11th Cir. 1999) (quoting 29 U.S.C. § 794(a)). "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979).  Here, plaintiff alleges that Palmer violated § 504 of the Rehabilitation Act, but does not describe any conduct or decision of Palmer's that could have effectuated such a violation as defined in the statutory framework.  Moreover, the facts do not permit the inference that Mingo—toward whom this claim probably should have been directed—closed plaintiff's case file solely by reason of disability.  Rather, even

plaintiff concedes that Mingo did not believe him temperamentally qualified to pursue a career as a public school teacher.  In other words, plaintiff has not alleged facts sufficient to establish his standing as an "otherwise qualified individual" within the meaning of § 504.  *See Davis*, 442 U.S. at 406.  For these reasons, this allegation should be dismissed for failure to state a claim.

Section 1985 prohibits a conspiracy to deprive a person of equal protection of the laws or equal privileges and immunities under the laws.  *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  Essential to a claim under § 1985 is the existence of a conspiracy.  *See id.*  In the instant matter, plaintiff alleges no facts tending to support his claim that Palmer acted in confederation with another to exclude Mr. Stewart from DVR's vocational rehabilitation program.  The court need not recognize the veracity of legal conclusions masquerading as assertions of fact.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although . . . we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").  Plaintiff offers merely the bare assertion that "two high level executive type administrators" conspired to terminate his participation in the rehabilitation program. (Doc. 38, 29)  Without more, plaintiff cannot make out a plausible claim for relief under § 1985, and this allegation should be dismissed for failure to state a claim.  *See Twombly*, 550 U.S. at 570.

*Count III*

Plaintiff alleges in count III that "[b]y not offering . . . inner (sic) agency due process or the protections of the legislation governing DVR activities this action of full knowledge of what was going on executive oversight by Bill Palmer was a clear violation of Section 504 of the Rehab Act, Section 202 of the Disabilities Act, and of the Civil Rights Act as Amended in 1991 . . . ." (Doc. 38, 30)  To the extent this

procedural due process allegation tracks the substance of count I, the claim does not require further analysis:  the facts as pleaded do not state a claim to relief that is plausible on its face, making dismissal the appropriate result.

Likewise, plaintiff cannot state a plausible claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-213.  Pursuant to § 202 of the ADA, 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  To establish a prima facie case under the ADA, a plaintiff must show, *inter alia*, that he was discriminated against *because* of his disability.  *See Pritchard v. So. Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir. 1996).  Plaintiff apparently sought services from DVR to address a disability, but has not alleged facts tending to show that he was excluded from participation in the vocational rehabilitation program because of that disability.  Rather, plaintiff asserts that his case file was closed for lack of cooperation after he refused counselor Mingo's recommendation that plaintiff change his vocational goal from a public school teacher to another vocation because Mingo was concerned about plaintiff's mental health status.  Such conclusory allegations will not satisfy the "heightened pleading requirements" for civil rights cases.  *See Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003); *see also Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) ("[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.").  Bolstered only by plaintiff's threadbare conclusions, this allegation should be dismissed for failure to

state a claim upon which relief may be granted.

Regarding the Civil Rights Act of 1991, plaintiff does not specify the provision of the statute under which he claims a violation.  Plaintiff, in effect, fails to put the defendants on notice of the nature of the injury alleged.  Consequently, this claim cannot survive.  *See GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998) (holding that the complaint must allege the relevant facts "with some specificity"); *Graddick*, 739 F.2d at 556 ("In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required."). Because the facts as pleaded do not state a plausible claim for relief, plaintiff's allegations under the ADA and the Civil Rights Act of 1991 should be dismissed for failure to state a claim.  *See Twombly*, 550 U.S. at 570.

*Count V*[3]

In count V, plaintiff alleges that Palmer failed to protect his privacy rights and "did collude with DVR attorneys and DVR counselors to condone violations of the Privacy Act [and] . . . violated Article I, Section 24, of the Florida Constitution and . . . condoned violations of Chapter 119 Florida Statutes dealing with Public Records." (Doc. 38, 31)  In support of this claim, plaintiff asserts that Fred Poteat, an administrator with DVR, took plaintiff's case files to his personal residence and divulged plaintiff's Social Security number to a physician in December 2002.  (Doc. 38, 19 & 30)

The Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a(b), "imposed upon federal agencies an array of record-keeping obligations to prevent unauthorized disclosures of confidential information."  *See Speaker v. U.S. Dep't of Health and*

---

[3] Plaintiff appears to have omitted count IV from the fourth amended complaint.  In the interest of consistency, plaintiff's original numbering is preserved.

*Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010). As a corollary, however, the private right of action created by the Privacy Act only applies to federal agencies. *See Schwier v. Cox*, 340 F.3d 1284, 1287 (11th Cir. 2003) (holding that non-disclosure obligations under the Privacy Act apply only to *federal* agencies). In light of DVR's undisputed status as a state agency, plaintiff has not articulated a plausible claim for relief under the Privacy Act.

Similarly, Florida Constitution article I, § 24(a), which establishes the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, is not applicable under the circumstances. Whereas article I, § 24(a) merely creates a right to inspection, plaintiff here alleges that his privacy was violated by the improper release of public records. The constitutional provision upon which plaintiff relies is, therefore, inapposite. Consequently, plaintiff cannot state a claim to relief that is plausible on its face. Likewise, plaintiff cannot state a plausible claim to relief under § 119.071, Florida Statutes, because that statutory provision simply delineates the general exemptions from inspection or copying of public records. Having articulated no plausible basis for relief, the privacy rights claims cannot survive. *See Twombly*, 550 U.S. at 570.

*Count VI*

Plaintiff alleges in count VI that Palmer, in conjunction with Eric J. Smith (former Commissioner of Education), Ed Jordan (Inspector General, Florida Department of Education), and Melinda Miguel (Chief Inspector General of Florida), violated § 504 of the Rehabilitation Act and 29 U.S.C. § 794(a) (relating to non-discrimination under federal grants and programs). In support of this claim, plaintiff contends that the named defendants ignored his "notifications . . . that case files had

been closed without due process" and in so doing violated his First Amendment right to petition for redress of grievances. (Doc. 38, 31)  To sustain such a constitutional claim, plaintiff must show that the state "affirmatively prevented" him from petitioning. *See Gillard*, 857 F.2d at 1101.  As discussed in the analysis of count II, the facts as pleaded do not indicate that anyone at DVR prevented plaintiff from pursuing judicial or administrative remedies.  On the contrary, plaintiff, by his own admission, took an administrative appeal but declined to seek judicial review.  In light of these facts and the burden of proof set forth in prevailing case law, plaintiff cannot articulate a plausible claim for relief.

*Count VII*

In count VII, plaintiff alleges that Mingo "violated the ADA, Section 504 of the Rehab Act[,] and Title 29 U.S.C. § 794(a) and violated the [p]laintiff's 14th Amendment right to due process." (Doc. 38, 33)  In support of this claim, plaintiff asserts that Mingo closed his case file without "prior warning" or "agency due process." (Doc. 38, 33) Mingo, according to plaintiff, thus deprived him of valuable services, his sense of security, professional employment opportunities, and his health and well-being.  These allegations bear close resemblance to those raised in count I against Mr. Palmer.  "A § 1983 action alleging a procedural due process clause violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process." *Cryder v. Oxendine*, 24 F.3d 175 (11th Cir. 1994).  Save for the unsupported conclusion of law that the process afforded him was constitutionally deficient, plaintiff does not offer argument as to the adequacy of the procedures in place.  Having failed to even address this essential element of a procedural due process claim, defendant cannot state a plausible cause of action for

violation of due process.  Consequently, this allegation should be dismissed for failure to state a claim upon which relief may be granted.

*Count VIII*

Plaintiff alleges in count VIII that Jordan and Miguel conspired "to deprive . . . [him] of his right to equal protection of the law . . . ."  (Doc. 38, 33)  "In order to state an equal protection claim, the plaintiff must prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably."  *Amnesty Int'l USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009) ("Thus, the identification of these individuals comprised a part of the claim itself.").  In this instance, plaintiff has not identified anyone else receiving services from DVR, let alone one who was treated more favorably.  For this reason, plaintiff has failed to state a plausible claim for relief under the equal protection clause.  Accordingly, this claim should be dismissed for failure to state a claim upon which relief may be granted.  *See Twombly*, 550 U.S. at 570.

To the extent the allegations comprising count VII may also be construed as arising under 42 U.S.C. § 1985(3) (prohibiting conspiracy to deprive persons of civil rights or privileges), the claims fare no better.  To state a claim under § 1985(3), a plaintiff must allege, *inter alia*, that defendants engaged in a conspiracy.  *See Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010).  Plaintiff cannot satisfy even this low bar, as nothing set forth in Stewart's fourth amended complaint permits the inference that Jordan and Miguel colluded in any manner to deprive plaintiff of the equal protection of the laws, or equal privileges and immunities under the laws.  Supported only by plaintiff's vague and conclusory accusations, the conspiracy claim cannot withstand scrutiny under § 1915(e)(2)(B) and should be dismissed for failure to state a claim upon which relief may be granted.  *See Graddick*, 739 F.2d at 557 ("A

complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").

Although phrased in quasi-legalese spread across multiple counts, plaintiff's grievance is not complex–he objects to the Florida Department of Education's failure, through its Division of Vocational Rehabilitation, to see him through the process toward gaining certification as a school teacher.  Yet, everyone, even in this country, who does not get what he wants from government, has not suffered statutory or constitutional deprivation.  The very processes implicit in plaintiff's unsuccessful efforts suggest quite strongly that Florida has considerable mechanisms in place to assist those in need of vocational rehabilitation, and failing a favorable outcome, allows an administrative appeal and, finally, judicial review.  With all respect to Mr. Stewart, this matter has come to an end, and this court should acknowledge that.

Accordingly, it is respectfully RECOMMENDED:

1.  That plaintiff's claims be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii), for plaintiff's failure to state a claim upon which relief may be granted.

2.  That the clerk be directed to close the file.

At Pensacola, Florida, this 28th day of March, 2012.

*/s/ Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).